# Exhibit 1


**CT Corporation**

**TO:**    Norma Teran
Jacobs Engineering Group, Inc.
1000 WILSHIRE BLVD STE 2100
LOS ANGELES, CA 90017-2417

**RE:**    **Process Served in Tennessee**

**FOR:**   Jacobs Engineering Group Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | James Anderson, et al., Pltfs. vs. Jacobs Engineering Group, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | * |
| **COURT/AGENCY:** | *, *<br>Case # 2019CV81 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/17/2019 at 15:54 |
| **JURISDICTION SERVED :** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | *<br>*<br>*, * * |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/17/2019, Expected Purge Date: 05/22/2019 |
| | Image SOP |
| | Email Notification,  Seamus McGorty  seamus.mcgorty@jacobs.com |
| | Email Notification,  Norma Teran  norma.teran@jacobs.com |
| | Email Notification,  Cynthia Stevens  cynthia.stevens@jacobs.com |
| | Email Notification,  Gerry Barrios  Gerry.Barrios@jacobs.com |
| | Email Notification,  Kim Mulligan  Kim.Mulligan@jacobs.com |
| | Email Notification,  Marisa Bannon  Marisa.Bannon@jacobs.com |
| | Email Notification,  Burns Logan  Burns.Logan@jacobs.com |
| | Email Notification,  Tammy Thompson  tammy.thompson1@jacobs.com |
| | Email Notification,  Taggart Hansen  Taggart.Hansen@jacobs.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **CT Corporation**

**TO:**   Norma Teran
Jacobs Engineering Group, Inc.
1000 WILSHIRE BLVD STE 2100
LOS ANGELES, CA 90017-2417

**RE:**   **Process Served in Tennessee**

**FOR:**   Jacobs Engineering Group Inc.  (Domestic State: DE)

Email Notification,  Lee Rose  lee.rose@jacobs.com

Email Notification,  Susan Horton  Susan.Horton@jacobs.com

Email Notification,  LUCY HALATYN  lucy.halatyn@jacobs.com

**SIGNED:**   C T Corporation System
**ADDRESS:**   300 Montvue RD
Knoxville, TN 37919-5546
**TELEPHONE:**   312-345-4336

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

**JAMES ANDERSON and RACHAEL ANDERSON**, et al., Plaintiffs,

v.

**JACOBS ENGINEERING GROUP, ROGERS GROUP INVESTMENTS, INC.**, Defendant.

Civil Action No: *2019-CV-81*

## SUMMONS



To: <u>Jacobs Engineering Group, Inc. C/O Registered Agent for Process, CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, TN 37929-9710</u>

You are hereby summoned and required to serve upon **John B. Dupree**, plaintiff's attorney, whose address is: **Bridgefront Law Group, PLLC, 616 West Hill Ave., 2d Floor, Knoxville, TN 37902**, a true copy of the answer to the complaint which is herewith served upon you, within thirty (30) days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Issued this *13* day of ___*May*___, 2019 at *3:26* o'clock, *P.* M.

Witness, **ANN GOLDSTON**, Clerk of Said Court, at office in ROANE County, Tennessee.

*Stacie Thompson D.C*

**ANN GOLDSTON, Clerk**

(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.)

## NOTICE

### TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of this court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. TCA § 26-2-114.

Received this _____ day of _____, 2019.

_____

Deputy Sheriff

### RETURN ON SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 2019, I served this summons together with the complaint as follows: _____
I failed to serve this summons within thirty (30) days after its issuance because: _____

_____

Sheriff-Deputy Sheriff

# IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

JAMES ANDERSON and RACHAEL ANDERSON; )
SANDRA AUSBURN as next of kin for STEPHEN AUSBURN;)
GRANT BAILEY and MICHELLE BAILEY; )
DARWIN WADE BEATY; )
ERIC BELL and TYMRI BELL; )
MICHAEL BERNIER and DANA BERNIER; )
EDWIN BLEDSOE; )
DARIL BLEVINS and NANCY BLEVINS; )
STEPHEN BOARDMAN; )
JAMES BOLLING and REBECCA BOLLING; )
WADE BOOS; )
PAMELA BRADEN as surviving spouse of JEFF BRADEN; )
ROBERT BROCK and WENDY BROOK; )
MAXWELL BYLLIOT and BETTY BYLLIOT; )
RICHARD CHOATE and SHERRY CHOATE; )
MATTHEW CLABOUGH and AMY CLABOUCH; )
MICHAEL COFER and BRANDI COFER; )
SHERRY COFER and GLENN COFER; )
SAMUEL DAVID COLLINS and LYNDSAY COLLINS; )
RHONDA COLLINS as surviving spouse for JOEY COLLINS;)
DAVID CROWLEY and PATRICIA CROWLEY; )
FREDDIE DANIELS; )
MARY DAVIS; )
JUSTIN DUNCAN and KERRI DUNCAN; )
STEPHEN DUNN; )
BRENDA DYER; )
JASON FOSTER; )
TIMOTHY GREENE and ROBIN GREENE; )
DEBBIE GUNTER; )
DUSTIN HALL and HEATHER HALL; )
RICHARD HARWOOD and CAROLE HARWOOD; )
WILLIAM HAZZARD and LADENA HAZZARD; )
MILLARD HENDRICKSON and )
BRENDA HENDRICKSON; )
JOHN HERRON and BETHANY HERRON; )
JOHN JENNINGS; )
DAVID JIMERSON and SHERRY JIMERSON; )
PETE JOHSEN; )
RICHARD JOHNSON; )
DAVID JONES; )



1

Filed  5-13 , 20 19
ANN GOLDSTON  Time 3:25
By Stacee Thompson  D.C.

JOHN JONES;                                          )
JACK KELLEY;                                         )
JEREMY KILBY and APRIL KILBY;                        )
LINDA KITTS as surviving spouse of WAYNE KITTS;      )
JAMES LECOMTE and DEBBIE LECOMTE;                    )
TERRY LEWALLEN;                                      )
JAMES LEDBETTER and TINA LEDBETTER;                  )
PAUL LOWE;                                           )
JOSEPH LOWERY;                                       )
SCOTT MCCOY;                                         )
JUDY METCALF as surviving spouse                     )
        of DARRELL METCALF,                          )
RONNY MITCHELL and THELMA MITCHELL ;                 )
DANNY MORGAN and JOII MORGAN;                        )
RUSSELL MORGAN;                                      )
ROBERT MUSE and JULIE MUSE;                          )
STEVE PETTYJOHN;                                     )
JOHN POINDEXTER and                                  )
MARIANNE POINDEXTER;                                 )
LARRY POINDEXTER and                                 )
REBECCA POINDEXTER;                                  )
MICO POSEY and TIFFANY POSEY;                        )
JAMES ROBINSON;                                      )
JOESPH ROOD;                                         )
PATRICIA ROYSDEN;                                    )
CLOUS SEIBER and ERNESTINE SEIBER;                   )
ELIZABETH SIRENE WORKMAN;                            )
JUSTIN SITZLAR and LINDSEY SITZLAR;                  )
GARY SMITH and HEATHER SMITH;                        )
SAMUEL SMITH and MARY SMITH;                         )
CURTIS SPRADLIN;                                     )
KEVIN STEPHENS;                                      )
JOESPH TALLENT and ROBIN TALLENT;                    )
TIMOTHY TERRY;                                       )
BRYAN TODD;                                          )
FRANK TOMB and KATHY TOMB;                           )
LEROY TURNER;                                        )
DAVID WEATHERFORD and MISSIE WEATHERFORD;            )
JASON WEBB and ASHLEY WEBB;                          )
KIRK WENZEL and JANICE WENZEL;                       )
JESSE WEST;                                          )
ELIZABETH WILLIAMS;                                  )
NIC WOODS;                                           )

**WILLIAM BRADSHAW WORKMAN**                    )
                                                )
     **Plaintiffs,**                    )
                                                )
**v.**                                          )   **No. 2019-CV-81**
                                                )
**JACOBS ENGINEERING GROUP, INC.**              )
                                                )
     **Defendant.**                    )

## COMPLAINT

Come now Plaintiffs, by and through counsel, to hereby bring their action for personal injuries and wrongful death from toxic fly ash exposure. Plaintiffs allege upon personal knowledge, information and belief as to the acts as follows:

### STATEMENT OF CASE

1.    This is a civil action for personal injury and wrongful death involving the contraction of illnesses resulting from continuous unlawful exposure to arsenic, the neurotoxin mercury, barium, strontium, thallium, lead, silica-quartz, asbestos, radioactive material, selenium, aluminum oxide, iron oxide, calcium oxide, boron, and other hazardous substances associated with toxic fly ash located at the TVA Superfund cleanup site (hereinafter "the Site") at Kingston, Tennessee, in which Jacobs Engineering Group, Inc. (hereinafter sometimes referred to as "Jacobs") did not carry out validly conferred authority, but acted contrary to and outside its scope of contractual authority and directives in fact and law granted from TVA as an "independent contractor". Further, Jacobs did not execute the will of any governmental function.

## JURISDICTION AND VENUE

2.     All actions complained of herein arose in Roane County, Tennessee where the toxic cleanup and Plaintiffs' exposure occurred.  Therefore, this Court has venue and jurisdiction over the claims.

## THE PARTIES

3.     Plaintiffs, as listed above, all reside in Tennessee.

4.     Defendant Jacobs Engineering Group, Inc. (hereinafter "Jacobs") is a foreign corporation with its principal place of business in Pasadena, California.  Jacobs Engineering Group, Inc. was licensed to do business, and was and is doing business, in the State of Tennessee, Roane County, and elsewhere and is directly liable for all actions contained herein.  Jacobs may be served through its Registered Agent for Process, CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee  37929-9710.

## GENERAL ALLEGATIONS

### The Site

5.     The events described herein took place primarily at the TVA KIF Superfund cleanup site in Kingston, Roane County, Tennessee.  Jacobs was contracted as the "independent safety contractor" directed by TVA to provide a safe environment for local community and all workers at the KIF toxic spill remediation site, including other individual independent contractors such as Plaintiffs, who performed toxic fly and bottom ash remediation at KIF in regards to the ash spill site in Kingston, Tennessee.  At all times material herein, Jacobs acted outside the scope of direction and authority conferred by TVA and contrary to its adopted Site Wide Safety and Health Plan (SWSHP) it created as an "independent contractor" to provide complete safety

4

oversight for TVA. Jacobs was an "independent contractor" for all purposes of its contract with TVA. The Contract required Jacobs to comply with all laws and regulations and other directives from TVA. Otherwise, Jacobs was independent. At all times material herein, Jacobs further intentionally or recklessly deviated from its scope of authority and the purpose for use of its independent expertise. Further, individuals at the KIF remediation site and living nearby were dependent upon Jacobs acting in good faith regarding safety, but it did not.

Events and Facts Surrounding the Continuous Unlawful Exposure Incurred by Plaintiffs

6.      TVA had entered into prime contracts with several companies, including Jacobs, (Jacobs oversaw site safety at KIF) and, upon information and belief, the contracts with Jacobs greatly exceeded forty million dollars ($40,000,000.00). Jacobs contracted for work with TVA whereby its actions and inactions directly and proximately caused the injuries and deaths that give rise to the claims of the Plaintiffs' herein.

7.      Jacobs promised and adopted a Site Wide Safety and Health Plan in part to appropriately provide safety equipment, training and education relevant to cleanup of environmental contamination/remediation, properly monitor the air, and other clean up responsibilities for the benefit of TVA. Their job was to protect the workers at the Site, and the general area and local community in order to restore portions of property damaged by the Kingston (KIF) ash spill. Further, Jacobs was contracted to provide equipment, training, and education to TVA's subcontractors and all other employees/independent contractors performing remediation work at the Site. The TVA contract with Jacobs was one in which TVA granted and totally relied upon Jacobs' independent decision making for safety as an "independent contractor".

The Contract states:

5

Contractor *shall* be an independent Contractor for all purposes of this contract … .

Contractor shall comply with Federal, State, and local laws (including regulations) affecting performance of its obligations under this contract and will indemnify and defend TVA from all liability resulting from its violation of such laws, regardless of whether TVA and Contractor are determined to be joint employers or co-employers. Contractor is responsible for ensuring compliance, including compliance by its subcontractors, with applicable compensation laws, rules, and regulations such as Fair Labor Standards Act. (Ex: A).

AND

TVA expects its contractors to protect workers from conditions that are unnecessarily dangerous to human health.

A. Purpose: TVA believes that Safety and Health is its most important value and all injuries and most illnesses, both on and off the job, are preventable. TVA is a zero injury culture company and expects its contractors and their sub-contractors to be committed to a zero injury work culture environment. In other words, occupational accidents or other incidents in which human health or safety is jeopardized are never acceptable.

B. Standards: Contractor will be proactive in taking necessary measures to avoid accidents or incidents which human health or safety is jeopardized. Contractor shall not permit any person employed by it or any subcontractor in the performance of work pursuant to this Contract at a project or worksite owned or controlled by TVA to work in surroundings or under working conditions which are unnecessarily dangerous to human safety or health.

In the event of conflict between OSHA regulations and the TVA requirements, the more stringent, i.e., the more protective of occupational health and safety, shall apply.

8. All actions described herein that were tortuously or intentionally committed by Jacobs upon Plaintiffs were outside the contracted scope and knowledge of TVA and were done independently. A jury in east Tennessee agreed in November, 2018 and found that Jacobs failed to adhere to the terms of its contract with TVA and the health requirements set forth in Jacobs' Site Wide Safety and Health Plan for the site. Further, the jury determined that Jacobs failed to exercise reasonable care in carrying out the duties it owed to workers at the site. In addition, the jury found that Jacobs' breach of duty was capable of causing hypertension, coronary artery disease, lung cancer, leukemia and other hematologic malignancies, skin cancer, allergic contact dermatitis, peripheral neuropathy, asthma, COPD and respiratory conditions including cough, sore throat, dyspnea on exertion, chest pain, bronchitis and emphysema. The plaintiffs herein have suffered greatly from these very conditions and, in fact, deceased Stephen Ausmus, who never worked in a coal mine, was found on autopsy to have pneumoconiosis (black lung).

9. Despite Jacobs' duties under this multi-million dollar agreement with TVA, it acted outside the scope of TVA and exceeded its authority and federal authority by misrepresenting or concealing from the Plaintiffs, independent contractors and others at the Site, TVA, and the Roane County citizens that the Superfund remediation would be conducted in a safe manner. Further, upon information and belief, Jacobs made numerous representations that fly ash was not harmful to human health, which is contrary to the safety plan documentation adopted, created, and possessed by Jacobs. Additionally, Jacobs did not appropriately mention the dangers of fly ash to the Plaintiff workers, the local community, certain companies, their employees, or independent contractors. Jacobs did not execute the will of TVA as explained further herein.

7

10.     Jacobs had in its possession manuals for fly ash safety that contained vital in-
formation on fly ash toxins that were not properly disseminated to individuals, including Plain-
tiffs, working at the Site. Jacobs created and adopted, but intentionally did not follow, its own
Site Wide Safety and Health Plan it submitted to TVA. Jacobs engaged in dangerous and inten-
tional harmful deviations to their adopted plan, significantly more drastic than was the cause that
was the basis for landowner recovery based upon governmental liability in Mays v. TVA, 699 F.
Supp. 2d 991 (E.D. Tenn. 2010). Jacobs never informed Plaintiffs of the fly ash dangers, nor ad-
hered to its SWSHP.

11.     In addition, Jacobs knowingly and intentionally misrepresented to the workers
such as Plaintiffs, and the local community, the nature and extent of the dangers of fly ash con-
stituents. These actions fell outside the scope of the authority conferred by TVA. For example,
one worker from the site testified under oath, along with a companion recording, that Jacobs
threatened him and that he would be hanging himself with his own genitalia if he wore a dust
mask on the Site for his protection; something that is as simple and necessary for use when one
paints a house. However, this was a toxic Superfund remediation site.

12.     In Jacobs' possession were documents that referenced toxic constituents and
target organs. One example of such information was/is entitled "Fly Ash Constituent Informa-
tion."

**TABLE 4 – 1:**
**FLY ASH CONSTITUENT INFORMATION**

| CONSTITUENTS | CAS # | 8 HR TWA ACGIH | 8 HR TWA OSHA | ROUTES OF EXPOSURE | SYMPTOMS OF EXPOSURE | TARGET ORGANS | ANALYTIC METHODS |
|---|---|---|---|---|---|---|---|
| SILICA – QUARTZ / RESPIRABLE / CRISTOBALITE | 14808-60-7 / 14464-46-1 | 0.025 MG/M3 | 0.050 MG/M3 | INHALATION, SKIN AND/OR EYE CONTACT, INGESTION | COUGH, DYSPNEA, WHEEZING, PROGRESSIVE RESPIRATORY SYMPTOMS (SILICOSIS), IRRITATION EYES | EYES, RESPIRATORY SYSTEM | 7500 7601 7602 |
| ALUMINUM OXIDE | 1344-28-1 | 2.5 MG/M3 | 5 MG/M3 | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, RESPIRATORY SYSTEM | EYES, SKIN, RESPIRATORY SYSTEM | 0500 0600 |
| IRON OXIDE | 1309-37-1 | 2.5 MG/M3 | 5 MG/M3 | INHALATION, INGESTION | BENIGN, PNEUMOCONIOSIS | RESPIRATORY SYSTEM | 7300 7301 7303 0102 |
| CALCIUM OXIDE | 1305-78-8 | 2.5 MG/M3 | 5 MG/M3 | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, UPPER RESPIRATORY TRACT, ULCER, PERFORATION, NASAL SEPTUM | EYES, SKIN, RESPIRATORY SYSTEM | 7020 7605 |
| ARSENIC (INORGANIC) | 7440-38-2 | 0.005 MG/M3 | 0.01 MG/M3 | INHALATION, SKIN ABSORPTION, SKIN AND/OR EYE INGESTION | ULCERATION NASAL SEPTUM, DERMATITIS, GASTROINTESTINAL DISTURBANCE, PERIPHERAL NEUROPATHY, RESPIRATORY IRRITATION | LIVER, KIDNEYS, SKIN, LUNGS, LYMPHATIC SYSTEM | 7900 7901 7303 7900 0102 |

1. Based on 50% of the 8 hour tdg exposure limit
2. Based on the lower of the values recognized by OSHA or the ACGIH. Guideline also value is based on OSHA levels which is typically lower than the sample specific concentration OSHA limit.
3. Suspected
4. Confirmed human carcinogen

13. Upon information and belief, this information was intentionally/recklessly not properly disseminated to certain companies, persons onsite, including Plaintiffs, and the local community in accordance with TVA's safety directives and the Emergency Planning and Community Right to Know Act. This intentional and knowing omission was contrary to the safety directives of TVA and contrary to the scope of authority conferred to Jacobs by TVA as the "independent contractor" upon which TVA relied.

Furthermore, upon information and belief, many of the toxins, routes of exposure, and target organs were recklessly omitted from the initial Site Wide Safety Plans that were drafted for the years preceding 2013.

14. At all times material hereto, Jacobs had full access to specialized information relevant to fly ash toxins and, based upon information and belief, Jacobs knew of the dangers and should have communicated them and protected all workers near the Site and to people living

nearby but misrepresented the dangers of it contrary to the will of any civilized governmental society.

15.     Jacobs deviated from exercising reasonable judgment to protect human health by committing impermissible reckless and/or intentional deviations from its Site Wide Safety and Health Plan promises to TVA, its ratepayers, the Plaintiffs and other workers it contractually obligated itself to protect. Jacobs acted intentionally and recklessly in bad faith disregarding human health, which was at the very essence and unique nature of its purpose of TVA contracting with them as the complete site wide "independent contractor" for safety. In short, converse to other contractors that normally engage in similar forms of contracting, Jacobs, in the present action, actually conflicted with federal policy and TVA policy to such a criminally gross extent that it required displacement of any available immunity as will be further demonstrated in the forthcoming paragraphs. By engaging in the conduct enumerated further in this Complaint, Jacobs committed the following non-discretionary violations:

a.      42 U.S.C. 7401, *et seq.*

b.      Tenn. Code Ann. § 39-13-101;

c.      Tenn. Code Ann. § 39-13-103;

The Tennessee State Air Pollution Control Regulations

d.      Tenn. St. Reg. 1200-3-3;

e.      Tenn. St. Reg. 1200-3-5;

f.      Tenn. St. Reg. 1200-3-8;

g.      Tenn. St. Reg. 1200-3-10;

h.      Tenn. St. Reg. 1200-3-11;

10

     i.       Tenn. St. Reg. 1200-3-12;

     j.       Tenn. St. Reg. 1200-3-13;

     k.      Tenn. St. Reg. 1200-3-19;

     l.       Tenn. St. Reg. 1200-3-22; and

     m.    Tenn. St. Reg. 1200-3-37.

16.     Plaintiffs were intentionally denied appropriate and/or timely safety training in regard to the hazards associated with inhaling toxic fly ash and/or working in and around fly ash, as the impression was given to them that the environment was safe by Defendant. Inadequate safety training was contrary to Jacobs' own Safety Plan, TVA directives, and the will of any civilized governmental society when considering the hazards and consequences.

17.     Defendant provided inadequate medical monitoring for Plaintiffs' health regarding the hazardous fly ash constituents. This, too, was outside the scope of authority conferred by TVA and their Site Wide Safety and Health Plan. In some instances, Defendant refused prescribed respirators by physicians and even dust masks (that would be as simple as using one to paint one's home) and conspired to remove people from employment that obtained said prescriptions. One employee stated:

> I worked at the Kingston ash spill site from Feb. 2008 to June 2013.
>
> On or about the month of June 2013, I was prescribed a respirator by my physician due to breathing problems that developed while working there.
>
> Shortly after presenting this prescription to safety personnel, I was informed I could not wear the respirator, despite it being prescribed by my physician.

I was prohibited from working and was soon after
terminated.

18.     Plaintiffs worked long hours per day in close proximity with toxic fly ash con-

stituents, and took significant amounts home on their clothing after working up to an average of

sixteen (16) to seventeen (17) hours per day. However, Jacobs did not provide complete proper

safety equipment to Plaintiffs and others, and, in fact, discouraged use of safety equipment by

threats to almost all workers at the Site. Even bringing your own dust mask to wear was prohib-

ited and individuals would be threatened with job status if worn. There were also dust masks

onsite designed for use but workers such as the Plaintiffs were prohibited from using them to

protect their health. The masks were ordered destroyed by Jacobs' management.

19.     The improper handling of the fly ash, caused by Jacobs, resulted in the ash be-

coming airborne and allowed for windward erosion throughout the Site and adjoining properties

allowing unsafe contact, inhaling, and ingestion. In fact, Jacobs would require its subcontractors

to wet and suppress fly ash around stationary air monitors and wash them to lower readings so

that the public, including Plaintiffs, would be misled. Jacobs would not engage in as much water

suppression in areas of the Site that were not being monitored -intentionally creating unsafe con-

ditions for human health contrary to its obligations and scope of its authority.

20.     Further, Jacobs primarily allowed mobile air monitoring units to be worn only on

days of rain when the fly ash would not be airborne – thus lowering the readings and providing

misleading results. Additionally, Jacobs would engage in a practice of misrepresenting results of

the records where high readings should or would have occurred that were beyond permissible

exposure limits (PELs).

21.     Due to these actions, and the failure of Defendant to provide proper safety equipment, Plaintiffs inhaled the fly ash dust and debris material and, on occasion, the fly ash would become imbedded in Plaintiffs' skin. Furthermore, some Plaintiffs would eat lunch on the site and consume the ash on food. Consequently, Plaintiffs were improperly exposed to high concentrations of fly ash toxic constituents while working on the Site for a prolonged duration of time. Upon information and belief, and pursuant to sworn testimony in open court, sometimes air monitoring records would be destroyed outside the scope of all laws referenced, the purpose of Jacobs' presence at KIF, and any authority conferred by TVA.

22.     Failure to provide hazardous materials workers with personal protective equipment is a violation of federal and state worker protection law.

23.     Jacobs fraudulently concealed the fact Plaintiffs had been exposed to hazardous substances.

24.     Further, upon information and belief, these fly ash constituents and other hazardous substances have remained present in the air, soil, and water at the Site until the present time.

25.     The effects of continued exposure to such hazardous substances proximately caused Plaintiffs to contract illnesses, from which they will never recover and/or from which they have suffered death. The healthcare costs incurred by these plaintiffs are in the millions of dollars.

## FIRST CLAIM FOR RELIEF

### Negligence

26.     In accordance with the principle in Mays v. TVA, 699 F. Supp.2d. 991 (E.D. Tenn. 2010), Defendant did not follow its own adopted Site Wide Safety and Health Plan as it promised the ratepayers of TVA it would adhere to and Defendant is not immune from suit for Plaintiffs' injuries and deaths outlined herein. In this case, Defendant failed to exercise due care in order to protect individuals performing site remediation once a Site Wide Safety and Health Plan was adopted. The Site Wide Safety and Health Plan was not followed by Jacobs. Under the rationale in Mays, Defendant is further liable to Plaintiffs for the following activities that are outside the scope of the authority delegated by TVA:

     A.     failing to train employees/independent contractors/subcontractors in applicable policies or procedures for working at the Site and for day-to-day safety for health, operations and management;

     B.     negligence or inadequate performance by failing to implement contracted promises to TVA and its site remediators, including contractors and subcontractors;

     C.     negligence and inadequate performance by Defendant of implementing policies and procedures regarding health and safety as promised to TVA for independent contractors and subcontractors working on the Site;

     D.     negligence in the construction and implementation of approved safety and health plans for independent contractors working on the Site;

14

E.      negligence in failing to provide approved adequate health equipment as promised to TVA for those independent contractors and subcontractors who worked on the Site; and

F.      negligent maintenance and the intentional altering and manipulating of toxic air monitoring results to TVA to create lower PEL readings that directly violated TVA directives and its scope of authority, and violating other statutes and regulations all of which caused injuries to Plaintiffs.

27.     Defendant Jacobs knew, or should have known, that the previously referenced actions were non-discretionary, as maintaining site safety and adherence with directives, statutes and regulations allowed for no discretionary choice.

28.     Moreover, Jacobs knowingly altered, and destroyed portions of air sampling material for testing to allow those in the exposure zone and elsewhere to be exposed to elevated amounts of toxins in violation of Sec. 6.0 of their Site Wide Safety and Health Plan it was bound to follow.

29.     Jacobs had actual notice of the seriousness of the potential problem with the air monitoring and lack of adequate safety and still chose to take little or no action to prevent serious injury to the plaintiffs and others from windward erosion.

30.     Jacobs' negligent acts and/or omissions described above proximately caused and continue to cause damage to Plaintiffs in the form of pain, suffering, economic loss, loss of quality of life, aggravation and inconvenience, death, medical bills and other damages – for all of which it is liable in damages.  To compound the problem, Defendant failed and refused to warn

15

Plaintiffs of the potential for serious injury and death from the fly ash constituents and particulate matter.

31.     Upon information and belief, Jacobs engaged in misrepresentation to limit its liability to TVA due to its having to be held accountable to the TVA Public Relations Department as a part of its safety implementation.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

32.     Plaintiffs refer to and re-allege Paragraphs 1 through 41 of this Complaint and incorporate them by this reference, as though fully set forth herein.

33.     Plaintiffs hereby assert their cause of action for Assault and Battery as Jacobs violated Tenn. Code Ann. § 39-13-101.

34.     Defendant knew that the fly ash contained hazardous substances before and during remediation activities.  Defendant nevertheless intentionally, knowingly, wantonly, offensively, willfully, and/or recklessly caused such hazardous substances to come into physical contact with Plaintiffs who worked on the Site and/or were transporting fly ash to and from the site and/or lived near the site.

35.     Such physical contact with hazardous substances in such matter was harmful and unwanted.

36.     Plaintiffs did not consent to such physical contact with any hazardous substances. Plaintiffs consented only to physical contact with materials described as non-hazardous substances.

16

37. Despite its known hazards, Jacobs Safety Manager, Tom Bock, intentionally misrepresented to others "you could drink fly ash daily and suffer no adverse health effects." This created a climate such that the workers and others, including Plaintiffs, believed the work site to be safe.

38. As a direct and proximate result of Jacobs' causing Plaintiffs to suffer harmful offensive physical contact with hazardous substances contained in fly ash, Plaintiffs have suffered injury and disease, death, fear from disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial. By violating criminal law under Tenn. Code Ann. § 39-13-101, Jacobs was not allowed discretion or choice and acted contrary to government will.

### THIRD CLAIM FOR RELIEF

### Negligence *Per Se*

39. Plaintiffs refer to and re-allege the previously referenced violations of state and federal laws as referenced in the entirety of this Complaint. Jacobs violated the following codes, rules and regulations:

       a.      Tenn. Code Ann. § 39-13-101;

       b.      Tenn. Code Ann. § 39-13-103;

      The Tennessee State Air Pollution Control Regulations:

       c.      Tenn. St. Reg. 1200-3-3;

       d.      Tenn. St. Reg. 1200-3-5;

       e.      Tenn. St. Reg. 1200-3-8;

       f.      Tenn. St. Reg. 1200-3-10;

       g.      Tenn. St. Reg. 1200-3-11;

       h.      Tenn. St. Reg. 1200-3-12;

       i.       Tenn. St. Reg. 1200-3-13;

       j.       Tenn. St. Reg. 1200-3-19;

       k.      Tenn. St. Reg. 1200-3-22; and

       l.       Tenn. St. Reg. 1200-3-37.

40.     Plaintiffs hereby assert their cause of action for Negligence *per se*.

41.     Further, Plaintiffs assert respiratory protection was necessary, especially in instances when prescribed by a physician.

42.     Plaintiffs were engaged in an ultra-hazardous activity further imposing strict liability.

43.     Jacobs intentionally/recklessly altered air monitoring samplings and in turn results and records to alter PEL's at unsafe levels.

44.     Jacobs violated Tenn. Code Ann. §§ 39-13-101 and 103 by knowingly and/or recklessly allowing Plaintiffs to incur bodily injury through contact with fly ash toxins and committed criminal assault and battery contrary to TVA directives and outside the scope of the authorized agency.

45.     As a direct and proximate result of Jacobs' negligence *per se*, Plaintiffs have suffered or are reasonably certain to suffer diseases, fear as a result, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

46. By not communicating that toxic fly ash was dangerous to Plaintiffs, Jacobs violated TVA directives that mandated this course of conduct and acted outside the scope of its authority.

### FOURTH CLAIM FOR RELIEF

### Intentional and/or Reckless Failure to Warn

47. Plaintiffs refer and re-allege Paragraphs 1 through 58 of this Complaint and incorporate them by this reference, as though fully set forth herein.

48. Plaintiffs hereby assert their cause of action for Intentional and/or Reckless Failure to Warn – which also constitutes a violation of Tenn. Code Ann. §.39-13-103 amongst other relevant laws cited.

49. Defendant knew, or should have known, that the fly ash was contaminated with toxic constituents.

50. Defendant therefore had a duty to warn and be truthful to the workers, the community and TVA of the presence of the toxic constituents and the actual amounts onsite that went beyond permissible exposure limits as some workers may be more physiologically sensitive to its toxins through ingestion, inhalation, and dermatological contact.

51. Defendant breached its duty by not only failing to warn Plaintiffs, but actually fraudulently concealing the fact from Plaintiffs.

52. Defendant's breach of the duty to warn caused Plaintiffs to work inside the dangerous environment without any respirators, masks, or necessary personal protective equipment, and to be exposed to high concentrations of toxins during that period of their continuous exposure. Others had to live with the toxins at their homes.

53. As direct and proximate result of Defendant's negligent/reckless failure to warn, Plaintiffs have suffered personal injury or death by acquiring illnesses such as pulmonary injuries (some so serious they need lung transplants), sinus injuries, heart injuries, strokes, skin problems, and etcetera, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF

#### Reckless Infliction of Emotional Distress

54. Plaintiffs refer to and re-allege Paragraphs 1 through 65 of this Complaint and incorporate them by this reference, as though fully set forth herein.

55. Plaintiffs hereby assert their cause of action for Reckless Infliction of Emotional Distress.

56. Defendant had a duty of care toward Plaintiffs not to cause then undue emotional distress.

57. Jacobs' knowing, wanton, and willful exposure of Plaintiffs to toxins and other hazardous substances breached its duty of care toward Plaintiffs as directed by TVA in delegating its authority to and relying upon Jacobs as an independent contractor to control site wide safety.

58. Defendants' choice to expose Plaintiffs to toxins and other hazardous substances has caused them to acquire the previously referenced illnesses, diseases, death and suffer emotional distress to a degree that no reasonable person should be expected to suffer.

59. As a direct and proximate result of Defendant's negligent infliction of emotional distress upon Plaintiffs, Plaintiffs have suffered damages, the exact amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Fraud

60.     Plaintiffs refer and re-allege Paragraphs 1 through 71 of this Complaint and incorporate them by this reference, as though fully set forth herein.

61.     Plaintiffs hereby assert their cause of action for Fraud.

62.     Jacobs represented to Plaintiffs that the fly ash did not contain dangerous toxins or other hazardous substances.

63.     Jacobs knew that its representation, both public and private, were false.

64.     Jacobs outrageously intended to cause Plaintiffs and others to continue to work on the Site without respirators or adequate personal protective equipment for its monetary benefit and altered air monitoring test results and, upon information and belief, emptied cartridges of fly ash to affect the amounts collected for detection amounts. Plaintiffs would not have worked in this environment without personal protective equipment had they had full knowledge that they did have contact with dangerous toxic constituents and other hazardous substances.

65.     Plaintiffs, in justifiable reliance upon the initial climate created by Jacobs that the Site was safe, worked without personal protective equipment and continued to do so for many hours per day even after noticing co-workers got sick because they trusted Jacobs. Specifically referenced are the statements, both public and private, by Jacobs Safety Manager Tom Bock, that the fly ash was safe - inducing such reliance and trust despite his superior knowledge that it was not.

66.     As a direct and proximate result of Jacobs' fraud upon Plaintiffs, Plaintiffs have suffered the referenced diseases, deaths and conditions, fear of disease, medical expenses, moni-

toring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Misrepresentation/Fraudulent Concealment

67.     Plaintiffs refer to and re-allege Paragraphs 1 through 78 of this Complaint and incorporate them by this reference, as though fully set forth herein.

68.     Plaintiffs hereby assert their cause of action for Misrepresentations and/or Fraudulent Concealment that occurred outside the scope and contractual authority conferred by TVA.

69.     Management at Jacobs knowingly and intentionally lied to subcontractors re-garding the safety of the toxicity of the fly ash. Jacobs Safety Manager, Tom Bock, stated you can "DRINK A GLASS OF FLY ASH PER DAY AND BE HEALTHY" – although this is patent-ly untrue.

70.     Jacobs misrepresented and concealed from Plaintiffs that the Site contained toxic constituents or other hazardous substances.

71.     The information known by Jacobs was concealed falsely and it acted with reckless regard as to whether or not its representation/concealment was false.

72.     Jacobs failed to use due care and honesty regarding the accuracy of its repre-sentations to Plaintiffs and deviated from its own Site Wide Safety and Health Plan.

73.     Jacobs intended to cause Plaintiffs to continue to work on the Site without personal protective equipment necessary to protect them from the aforementioned hazards.

74. Plaintiffs, in justifiable reliance upon Jacobs' representation that the toxic fly ash was safe, did work on the Site without respirators, masks or personal protective equipment.

75. Plaintiffs would not have worked on the Site without respirators or personal protective equipment had they known of the dangers of prolonged exposure.

76. As a direct and proximate result of Defendant's fraud upon Plaintiffs, Plaintiffs have sustained illnesses, death, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## JURY DEMAND

77. Plaintiffs hereby demand a trial by jury on all issues raised herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray judgment against Defendant as follows:

A. For fair compensatory damages for physical injury, disease, fatal illness, pain and suffering, mental anguish, medical expenses, medical monitoring costs, and lost wages in any amount not to exceed One Hundred and Fifty-Six Million Dollars ($156,000,000.00);

B. For punitive damages equal to fifteen percent (15%) of Defendant's contracted revenue regarding all KIF remediation contracts between TVA and this Defendant; and

C. On all Claims for Relief, such other and further relief as this Court deems just and proper under the circumstances.

Plaintiffs reserve the right to amend this Complaint as the facts, through discovery, should warrant.

23

Respectfully submitted this 13th day of May, 2019.

John Dupree
Bridgefront Law Group, PLLC
616 W. Hill Ave., 2d Floor
Knoxville, TN 37902
865-223-5184

Keith D. Stewart
James K. Scott
Market Street Law, PLLC
625 Market Street, 14th Floor
Knoxville, TN 37902
(865)457 -5081

## COST BOND

We hereby acknowledge ourselves as sureties in this cost of this cause in accordance with Tenn. Code Ann. §20-12-120.

Bridgefront Law Group, PLLC

By: _____

John B. Dupree



*Return*

# IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

**JAMES ANDERSON and RACHAEL ANDERSON**, et al., Plaintiffs,

v.

**JACOBS ENGINEERING GROUP, ROGERS GROUP INVESTMENTS, INC.,** Defendant.

Civil Action No: 2019-CV-81

## SUMMONS

**To:** **Jacobs Engineering Group, Inc. C/O Registered Agent for Process. CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, TN 37929-9710**

You are hereby summoned and required to serve upon **John B. Dupree,** plaintiff's attorney, whose address is: **Bridgefront Law Group, PLLC, 616 West Hill Ave., 2d Floor, Knoxville, TN 37902,** a true copy of the answer to the complaint which is herewith served upon you, within thirty (30) days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Issued this _13_ day of _May_____, 2019 at _3:26_ o'clock, _P_ M.

Witness, **ANN GOLDSTON**, Clerk of Said Court, at office in ROANE County, Tennessee.

_Staree Thompson D.C._

**ANN GOLDSTON**, Clerk

(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.)

### NOTICE

#### TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of this court. The list may be filed at any time and may be changed by you thereafter as necessary; however, **unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.** Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. TCA § 26-2-114.

Received this _17th_ day of _May_____, 2019.

_____
Deputy Sheriff

#### RETURN ON SERVICE OF SUMMONS

I hereby certify and return that on the _17th_ day of _May_, 2019, I served this summons together with the complaint as follows: _handing directly to representative of CT Corporation System_
I failed to serve this summons within thirty (30) days after its issuance because: _____

_____
Sheriff-Deputy Sheriff